1  Devin A. McRae, SBN 223239
    *dmcrae@earlysullivan.com*
2  Peter Scott, SBN 247786
    *pscott@earlysullivan.com*
3  EARLY SULLIVAN WRIGHT
    GIZER & McRAE LLP
4  6420 Wilshire Boulevard, 17th Floor
   Los Angeles, California 90048
5  Telephone: (323) 301-4660
   Facsimile: (323) 301-4676
6
   Attorneys for Plaintiff
7  WILLIAM CRABTREE

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  WILLIAM CRABTREE,                    Case No.  2:22-cv-00180

12              Plaintiff,               **COMPLAINT AND DEMAND FOR**
                                         **JURY TRIAL**
13         v.
                                         1. Declaratory Relief
14  ROBERT KIRKMAN, an individual;       2. Promissory Fraud
    ROBERT KIRKMAN, LLC, a               3. Declaratory Relief
15  Kentucky limited liability company,  4. Breach of Oral Contract
    and DOES 1-10, inclusive.            5. Common Counts – Money Had
16                                          and Received
               Defendants.               6. Accounting
17

18

19

20

21

22

23

24

25

26

27

28

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW
654750.4

Plaintiff William Crabtree ("Crabtree" or "Plaintiff") brings this action against Defendants Robert Kirkman ("Kirkman") and Robert Kirkman, LLC ("Kirkman LLC") as follows:

## I.    **INTRODUCTION**

1.    Crabtree is an artist and colorist who co-created the comic series *Invincible* (the "Work"), acting as the colorist for the first fifty issues of the book, comprising more than one third of the title's complete run, and establishing much of the palette and color schemes that would be followed in subsequent issues. The Work was prepared by Crabtree, Kirkman and others with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole. As such, Crabtree and Kirkman were thus joint authors and co-owners of the copyrights in the Work under the Federal Copyright Act.

2.    Kirkman is a comic book author cum television and film producer who has notoriously boasted in public interviews of swindling artists with whom he has collaborated out of their rights in their jointly created works.  For example, in a May 31, 2011 interview, Kirkman had the following exchange: "Q.  As an aspiring writer and comic book writer, how do I go about getting an illustrator?  Kirkman:  Uh, trickery and deceit . . . People are a little squirrelly, so it's very difficult.  And so I would advise trickery and deceit."  Kirkman similarly gave at least four podcast interviews wherein he bragged about deceiving comic artist Tony Moore into creating the artwork for the original comic series *The Walking Dead*.  ("I was lucky enough to meet Tony Moore in seventh grade, and so I knew that guy and was able to trick him into drawing comic books for me at a very young age.")[1]  Fraud and deceit has become

---

[1]    Kirkman was sued by Mr. Moore in 2012 based on allegations of Kirkman fraudulently wresting Mr. Moore's copyright ownership rights in *The Walking Dead* series that are shockingly similar to Mr. Crabtree's allegations herein.  *See* https://www.thewrap.com/walking-dead-writer-robert-kirkman-jokingly-advised-trickery-and-deceit-illustrators-his-sue/.  Mr. Moore's lawsuit against Kirkman was settled confidentially before the matter went to trial.  *See* https://www.hollywoodreporter.com/business/business-news/walking-dead-robert-

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW

654750.4

a standard business practice for Kirkman and is apparently where his true creative aptitude lies.  It is precisely this conduct which has led to the present lawsuit (and evidently to Kirkman's business "success" generally).

3.     In 2005, Kirkman and his agents devised a scheme to fraudulently induce Crabtree to abandon and assign his copyright interest in the Work to Kirkman's alter-ego limited liability company, Kirkman LLC.  Based on a series of false promises, false representations and material omissions (which was a routine business practice at the time), Kirkman and his agents convinced Crabtree to enter into a written "Certificate of Authorship" which *post-hoc* purported to classify Crabtree's contributions as "works made for hire."  Kirkman expressly represented to Crabtree that this Certificate of Authorship would not change Crabtree's agreed upon rights and participation in the Work (including, but not limited to, co-ownership  of the copyright in the Work and any renewals and extensions thereof, and the right to receive contingent compensation generated from the exploitation of the Work and any derivative and ancillary rights in connection therewith), but that Hollywood studios and executives did not want to deal with multiple creators and that this Certificate of Authorship would make the Work far more commercially exploitable for both Crabtree and Kirkman.  Consistent with his representations to Crabtree, after the execution of the Certificate of Authorship, Kirkman continued to pay proceeds to Crabtree per his ownership interest in the Work.  Kirkman now falsely claims those payments were simply "bonuses."

4.     Further, even if the Certificate of Authorship was valid (it is not), Kirkman and Kirkman LLC have also materially failed to perform their payment, reporting and accounting obligations thereunder.

---

kirkman-lawsuit-373667/; https://deadline.com/2012/09/walking-dead-robert-kirkman-lawsuit-settlement-anthony-moore-342710/.

EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
ATTORNEYS AT LAW

654750.4

5.      Through this action, Crabtree seeks, among other things, (1) a declaratory judgment that he is a joint author of the Work and holds an undivided ownership interest in the entire Work, (2) rescission of the Certificate of Authorship and the return of his co-author copyright interests in the Work, (3) an accounting of what is owed to Crabtree by Kirkman and/or Kirkman LLC by virtue of Crabtree's copyright interests in the Work and (4) monetary damages, including punitive damages.

## II.    **PARTIES**

6.      Plaintiff is an individual residing in the State of Oregon, County of Multnomah.

7.      Kirkman is an individual who, on information and belief, resides in the State of California, County of Los Angeles

8.      Kirkman LLC is a Kentucky limited liability company with its principal place of business located in the State of California, County of Los Angeles. On information and belief, Kirkman is Kirkman LLC's sole member and manager.

9.      The true names and capacities of Defendants sued herein as Does 1 through 10, inclusive ("Does," collectively with Kirkman and Kirkman LLC, "Defendants"), are presently unknown to Plaintiff, and therefore are sued under fictitious names.  Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of Does when they are ascertained.

10.     On information and belief, Defendants are, and at all times mentioned herein, were, the agents, servants and/or employees of each of the other Defendants, and each of them was acting within the scope of its, his or her authority as the agent, servant and/or employee of each other.  On information and belief, Defendants performed the acts and conduct herein alleged directly, aided and abetted the performance thereof or knowingly acquiesced in, ratified and accepted the benefits of such acts and conduct, and therefore each of the Defendants is liable to the extent of the liability of the Defendants as alleged herein; consequently, all Defendants are

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW
654750.4

jointly and severally liable to Plaintiff for the damages sustained as a proximate result of their conduct.

11.     On information and believe, at all times herein material, each Defendant was completely dominated and controlled by its co-Defendants and each was the alter-ego of the other.  Whenever and wherever reference is made in this Complaint to any conduct by Defendant or Defendants, such allegations and references shall also be deemed to mean the conduct of each of Defendants, acting individually, jointly and severally.  Whenever and wherever reference is made to individuals who are not named as Defendants in this Complaint, but were employees and/or agents of Defendants, such individuals at all relevant times acted on behalf of Defendants named in this Complaint within the scope of their respective employment.

## III.   JURISDICTION AND VENUE

12.     This action arises under the copyright laws of the United States, 17 U.S.C. §§ 101, et seq. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

13.     Venue lies in this District under 28 U.S.C. §§ 1391(b) and (c).  Defendant Kirkman is a resident of this District.  Defendant Kirkman LLC is deemed a resident of this District as it maintains its principal place of business in Los Angeles County, State of California, and thus is subject to personal jurisdiction in this District.

## IV.   GENERAL ALLEGATIONS

### A.   Joint Authorship of the Work

14.     The Work consists of a comic book and graphic novel series entitled *Invincible*, which follows the coming of age story of an eponymously named superhero.  The series gained critical acclaim and a devoted following as a result of the juxtaposition of extreme graphic violence with beautifully rendered and richly colored artwork and visuals.

15.     The Work was initially co-created by Kirkman, Crabtree and artist Cory Walker in the early 2000's.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

654750.4

16.     At the outset, Kirkman and Walker provided the plot, characters, dialogue, themes, sequence of events and the drawings, and Crabtree the color, and with that, the setting, costumes, mood, and overall look and feel.  This collaboration turned into finished comic books, expressing the three authors' ideas through the collaborative combination of artwork, coloring and accompanying text.  Indeed, the character William Clockwell in the Work (appearing in the very first issue in the comic series) is based on Crabtree, with Kirkman and original artist Cory Walker having requested a photograph of Crabtree from which to draw the character.  Walker ceased participation on the Work after Issue No. 7 of the Work and was replaced by a new artist.

17.     Crabtree and Kirkman eventually jointly authored the Work, with Crabtree creating the coloring and certain other artistic elements and Kirkman providing the accompanying text on the initial 50 issues of the series.

18.     Crabtree and Kirkman intended that their respective contributions be merged into inseparable and/or interdependent parts of a unitary whole.

19.     The co-creation process of the Works was a collaborative, "give and take" effort by both Crabtree and Kirkman – with the two co-creators bouncing ideas back and forth.

20.     Each party contributed intellectual modification to the Work and neither party worked exclusively at the other's direction or on a "work for hire" basis.

21.     Aside from jointly masterminding with Kirkman the foundational elements of the series, Crabtree's artistic contributions provided, among other things, the "look" and "fee" of the Work – a critically important element in intensely visual works such as comic books.

22.     In particular, Crabtree's artistic vision for the Work has been utilized and drawn upon extensively in subsequent comic issues and the subsequent television adaptation of the comic book series.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

654750.4

23.     In recognition of Crabtree's co-authorship and co-ownership of the Work, Kirkman and Crabtree agreed that Crabtree was to receive twenty percent (20%) of single issue sales of the Work with a minimum of $40 per page and ten percent (10%) of any revenues generated from other film or television commercial exploitation of the Work together with any derivative projects based on the Work and any allied or ancillary rights in the Work.

**B.     Kirkman Fraudulently Induces Crabtree to Waive and Assign his Copyright Interest in the Work**

24.     In July 2005, Kirkman was attempting to license television and theatrical rights to certain comic series with which he was involved, including without limitation the Work, as well as numerous other titles including *The Walking Dead* comic series.

25.     Without any advance notice, Kirkman approached Crabtree at the 2005 "Comic-Con" Convention in San Diego, California and presented Crabtree with a pre-printed document entitled "Certificate of Authorship," which purported to post-hoc characterize all of Crabtree's contributions to the Work as a "work for hire" – even though this was demonstrably untrue.  Kirkman and Kirkman LLC told Crabtree that Kirkman was in final stage discussions with certain Hollywood studios to license the Work for television and/or theatrical production and that, as per the specific request of these studios, having the Work represented by a single creator would increase its commercial viability and result in higher monetary benefits for both Kirkman and Crabtree.

26.     As the document was being presented to Crabtree after his contributions had already been completed on the Work and the financial arrangement had already been established, Kirkman falsely told Crabtree that Crabtree's rights and financial interest in the Work would remain unchanged if he signed the Certificate of Authorship and that the document would simply allow Kirkman to market the licensure of the Work more easily, resulting in greater profits for both of them. Kirkman specifically told Crabtree that Crabtree could "trust him."   Kirkman

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

654750.4

specifically told Crabtree: "Our deal [on the Work] stays the same.  This is just for the Hollywood people so we can get paid."  Crabtree was given no opportunity to have the document reviewed by an attorney and Kirkman gave the impression that it needed to be signed then and there right away as Kirkman was attending meetings with Hollywood studios during the convention regarding the Work that would cease if the document was not signed.  Crabtree was never provided with a copy of what Kirkman had him sign.

27.    Under these false pretenses, Crabtree signed the Certificate of Authorship, specifically relying on the fact that, based on Kirkman's express representations, Crabtree's ownership of the Work and financial interest therein remained unchanged and that the document was a mere formality for Kirkman to market the Work.  No consideration was paid to Crabtree for signing the Certificate of Authorship.

28.    Kirkman continued to pay Crabtree per their original financial arrangement at rates greater than $40 per page for single issue sales of the Work even after the execution of the Certificate of Authorship.  Additionally, after execution of the Certificate of Authorship, Kirkman paid Crabtree thousands of dollars in connection with licensure of the Work by MTV for a television based motion comic and by Paramount Pictures for an option for film and television rights on the Work.  Based on these repeated and ongoing payments, Crabtree believed that what Kirkman had originally stated remained true – namely, that Crabtree continued to be an owner of the Work entitled to a share of the financial proceeds generated from the exploitation thereof.

29.    In 2020, Crabtree learned that Amazon Prime was moving forward on its plan to launch an episodic series based on the Work.  Crabtree promptly contacted Kirkman to discuss the particulars of the series and the license with Amazon Prime, but Kirkman ignored Crabtree's communications.  When Crabtree was finally able to communicate with Kirkman between August 26 and 31, 2020, Kirkman repudiated

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW
654750.4

the representations he made to induce Crabtree's signature on the Certificate of Authorship 16 years prior and informed Crabtree that Kirkman LLC was the sole owner of the Work, that Crabtree had no ownership interest and was not entitled to any monetary proceeds generated from the Work as a result of the Certificate of Authorship.  When Crabtree questioned Kirkman about why Kirkman continued to pay Crabtree royalties on the Work for years after the Certificate of Authorship, Kirkman stated that those royalty payments were actually just "bonuses," that he paid at his discretion.

30.    Crabtree has demanded that Kirkman provide an accounting of or permit an inspection of the books and records reflecting the proceeds generated by the Work, but Kirkman has ignored these requests and has failed to provide any accounting or inspection opportunity whatsoever.

## **FIRST CLAIM FOR RELIEF**

## **(Declaratory Relief (28 U.S.C. §§ 2201, *et seq.*; 17 U.S.C. §§ 101, 201(a))**

## **against all Defendants)**

31.    Crabtree incorporates herein by reference each and every allegation contained in the preceding paragraphs as though set forth in full.

32.    An actual controversy exists between Crabtree, on the one hand, and Defendants Kirkman and Kirkman LLC, on the other hand, regarding Crabtree's co-authorship copyright interests in the Work.  Crabtree and Kirkman jointly created the Work with the preconcerted common design to render the Work into finished comic books, expressing Kirkman's general concepts through both the comic artwork, contributed by Crabtree, and the accompanying text, contributed by Kirkman. Crabtree and Kirkman intended that their respective contributions be merged into inseparable and/or interdependent parts of a unitary whole.  Crabtree and Kirkman each contributed intellectual modification to the Work and neither party worked exclusively at the other's direction or on a "work-for-hire" basis.  Crabtree contends that he is a co-author of the Work.  Kirkman disputes that Crabtree is a co-author of

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW
654750.4

the Work.

33.     Accordingly, Crabtree is entitled to a declaratory judgment that he is a joint author under 17 U.S.C. §§ 101 and 201(a), entitled to all rights and benefits of the attendant, undivided copyright interests, of the Work *Invincible*.

## SECOND CLAIM FOR RELIEF

### (Promissory Fraud against all Defendants)

34.     Crabtree incorporates herein by reference as though set forth in full the allegations in the preceding paragraphs.

35.     In July 2005, prior to executing the Certificate of Authorship, Kirkman was attempting to license the television and theatrical rights to the Work.  Kirkman told Crabtree that he was in final stage discussions with Hollywood studios to license the Work, and that, as per the specific request of these studios, having the Work represented by a single creator would increase its commercial viability and result in higher monetary benefits for both Kirkman and Crabtree.

36.     Without any advance notice, Kirkman approached Crabtree at the 2005 "Comic Con" Convention and presented Crabtree with a pre-printed document entitled "Certificate of Authorship," which purported to post-hoc characterize all of Crabtree's contributions to the Work as a "work for hire" – even though this was demonstrably untrue.  Kirkman falsely told Crabtree that his rights and financial interest in the Work would remain unchanged if he signed the Certificate of Authorship and that the document would simply allow Kirkman to market the licensure of the Work more easily, resulting in greater profits for both of them.  Kirkman specifically told Crabtree that Crabtree could "trust him."  Crabtree was given no opportunity to have the document reviewed by an attorney.

37.     Crabtree reasonably relied on Kirkman, Kirkman LLC and their agents' statements and Crabtree signed the Certificate of Authorship, understanding that, based on Kirkman's representations, Crabtree's ownership of the Work and financial interest therein remained unchanged and that the document was a mere formality for

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

654750.4

Kirkman to market the Work.  No consideration was paid to Crabtree for signing the Certificate of Authorship.

38.     On information and belief, Kirkman and Kirkman LLC knew that such representations were false and fraudulent and/or made such representations with reckless disregard for the truth at the time they were made, and made such misrepresentations for the purpose of inducing Crabtree to rely thereon to his detriment and execute the Certificate of Authorship and waive and assign his copyright ownership in the Works to Kirkman LLC – a new entity that had only been in existence for approximately 3 or 4 months at the time the Certificate of Authorship was executed.

39.     Crabtree, at the time that such representations were made, did not know, and had no reason to know that the representations were false, instead believing them to be true.  In reasonable reliance thereon, Crabtree executed the Certificate of Authorship.  Had Crabtree known that Kirkman's representations were false, he would have never executed the Certificate of Authorship.[2]

40.     Crabtree's reliance on the aforementioned misrepresentations was reasonable and justified.

41.     The aforementioned misrepresentations were a substantial factor in causing harm to Crabtree, who has not received the proper amount of royalties owed to him and has never received an accounting.   As a proximate result of the misrepresentations, Crabtree has suffered damages in an amount to be proven at trial.

42.     Defendants are liable for any loss or damages, subject to proof, suffered by Crabtree as a direct and proximate result of Defendants' acts and omissions alleged herein.  Crabtree cannot ascertain at this time the full nature, extent or amount of damages suffered as a result of Defendants' conduct, but it is above the jurisdictional

---

[2]     As alleged above in Paragraph 29, Crabtree did not discover Kirkman's July 2005 representations were false when made until August 2020 when Kirkman shockingly denied and repudiated them.



654750.4

minimum of this Court.  Furthermore, Defendants' conduct as described herein was done with a conscious disregard of the rights of Crabtree, with the intent to vex, annoy and/or harass Plaintiff and to unjustly profit from the Work to the exclusion of Crabtree.  Such conduct was unauthorized and constitutes oppression, fraud and/or malice entitling Crabtree to an award of punitive damages in an amount appropriate to punish or set an example of Defendants in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

### (Declaratory Relief against all Defendants)

43.    Crabtree incorporates herein by reference as though set forth in full the allegations in the preceding paragraphs.

44.    An actual controversy exists between Crabtree, on the one hand, and Defendants Kirkman and Kirkman LLC, on the other hand, regarding the existence and validity of the Certificate of Authorship.  Kirkman and Kirkman LLC contend that the Certificate of Authorship is a valid and binding agreement between Kirkman LLC and Crabtree.  Crabtree disputes that the Certificate of Authorship is a valid and binding agreement because, among other things, it was procured by fraud as alleged above and neither Kirkman nor Kirkman LLC provided any consideration to Crabtree in connection with the Certificate of Authorship.

45.    In the alternative, and in the event the Certificate of Authorship is deemed to be a valid and binding agreement, the parties dispute its interpretation. Crabtree contends that the Certificate of Authorship applies only and exclusively to treat Crabtree's contributions to the Work as a "work made for hire" in the event the Work is turned into a motion picture.  Crabtree contends the Certificate of Authorship has no applicability to and does not  modify or transmute his copyright ownership rights in the Work if the Work is used for any purpose other than a motion picture. Kirkman and Kirkman LLC dispute this contention as to the limited applicability of the Certificate of Authorship as affects Crabtree's rights in the Work.  An actual controversy exists between Crabtree, on the one hand, and Defendants Kirkman and

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

654750.4

Kirkman LLC, on the other hand, regarding the interpretation of the Certificate of Authorship (if, and only if, the Certificate of Authorship is deemed to be a valid and binding agreement in the first instance).

46.     Crabtree desires a judicial determination of the parties' respective rights and/or obligations under the Certificate of Authorship and the validity thereof.   A judicial declaration is necessary and appropriate at this time under the circumstances in order that Crabtree and Defendants can prospectively govern their affairs appropriately with respect to the Certificate of Authorship.

47.     Crabtree therefore requests a judicial determination that the Certificate of Authorship is void ab initio and of no force or effect or, in the alternative, that it applies solely to Crabtree's ownership rights in a motion picture derived from the Work and for no other purpose.

### FOURTH CLAIM FOR RELIEF

### (Breach of Oral Contract against all Defendants)

48.     Crabtree incorporates herein by reference as though set forth in full the allegations in the preceding paragraphs.

49.     Crabtree and Kirkman and Kirkman LLC had an oral agreement that Crabtree was to receive twenty percent (20%) of single issue sales of the Work with a minimum of $40 per page and ten percent (10%) of any revenues generated from other film or television commercial exploitation of the Work together with any derivative projects based on the Work and any allied or ancillary rights in the Work.

50.     Crabtree has performed each and every act, condition and covenant incumbent upon him in accordance with the terms of the aforementioned agreement, except as excused, waived or prevented by the acts of Kirkman and/or Kirkman LLC.

51.     Kirkman and Kirkman LLC have breached their contractual obligations by, among other things, their failure to pay all money owed to Crabtree in accordance with their agreement.



EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

654750.4

52.     As a direct and proximate result of the breaches by Kirkman and Kirkman LLC of their express contractual obligations, Crabtree has suffered monetary damages in an amount to be proven at trial, which amount exceeds the jurisdictional minimum of this Court.

## FIFTH CLAIM FOR RELIEF

### (Common Counts – Money Had and Received against all Defendants)

53.     Crabtree incorporates herein by reference as though set forth in full the allegations in the preceding paragraphs.

54.     On information and belief, Kirkman and Kirkman LLC are indebted to Crabtree in a certain sum for money had and received by Kirkman and Kirkman LLC for the use of Plaintiff.  On information and belief, Kirkman and Kirkman LLC have failed and continue to fail to pay Crabtree the sum he is owed.

55.     As a direct and proximate result of Kirkman and Kirkman LLC to pay Crabtree the sums owed, Crabtree has suffered monetary damages in an amount to be proven at trial, which amount exceeds the jurisdictional minimum of this Court.

## SIXTH CLAIM FOR RELIEF

### (Accounting against all Defendants)

56.     Crabtree incorporates herein by reference as though set forth in full the allegations in the preceding paragraphs.

57.     By virtue of Crabtree's status as a joint author and co-copyright owner of the Work, or, in the alternative, by virtue of the parties' course of dealing and Crabtree's entitlement to receive contingent compensation based on the exploitation of the Work (and all derivative and ancillary rights therein), Crabtree is entitled to an accounting from Kirkman and Kirkman LLC.  Kirkman and Kirkman LLC are in the best position to know the true and correct amount of revenues generated by the Work to which Crabtree is entitled to a percentage.

58.     Kirkman and Kirkman LLC have failed and refused to render any accounting to Crabtree.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

654750.4

59.     Kirkman and Kirkman LLC have raised a number of pretexts in an effort to hinder, obstruct, evade and delay Crabtree's efforts to audit their books and records and discover causes of action that he might have against Kirkman and Kirkman LLC. Thus, the true and correct balance due to Crabtree can only be ascertained by an accounting performed under the supervision of the Court.

### PRAYER FOR RELIEF

WHEREFORE, Crabtree prays for a judgment as follows:

**As to the First Claim for Relief:**

1.     For an order pursuant to 28 U.S.C. § 2201, *et seq.*, and other applicable law, declaring that Crabtree is a joint author of *Invincible* and holds an undivided ownership interest in the entire work for each respective title, including all contributions contained therein.

**As to the Second Claim for Relief:**

2.     For general, incidental and consequential damages according to proof at trial or, in the alternative, rescission of the Certificate of Authorship and disgorgement of royalties owed to Crabtree as a co-copyright owner;

3.     For punitive damages.

**As to the Third Claim for Relief:**

4.     A judicial declaration that the Certificate of Authorship is void ab initio and of no force or effect or, in the alternative, that it applies solely to Crabtree's ownership rights in a motion picture derived from the Work and for no other purpose.

**As to the Fourth Claim for Relief:**

5.     For general, incidental and consequential damages according to proof at trial.

**As to the Fifth Claim for Relief:**

6.     For general, incidental and consequential damages according to proof at trial.

**<u>As to the Sixth Claim for Relief:</u>**

7. For a preliminary and permanent injunction requiring Kirkman and Kirkman LLC to provide compete and timely cooperation with an audit by Crabtree or his agents as concerns the Work.

**<u>As to all Claims for Relief:</u>**

8. For pre-judgment interest at the legal rate for all amounts owed;

9. For costs of suite incurred herein, including reasonable attorney's fees;

10. For such further legal or equitable relief as this Court may deem just and proper under the circumstances.

Respectfully submitted,

Dated: January 9, 2022

EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP

By: */s/ – Devin A. McRae*
Devin A. McRae
Peter Scott
Attorneys for Plaintiff
WILLIAM CRABTREE

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff William Crabtree hereby demands trial by jury for all issues so triable.

Dated: January 9, 2022

EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP

By: */s/ – Devin A. McRae*
Devin A. McRae
Peter Scott
Attorneys for Plaintiff
WILLIAM CRABTREE