**Joint Statement of Uncontroverted Facts and Genuine Disputes**
Crabree v. Kirkman et al., Case No. 2:22-cv-00180-MEMF (AFMx)

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| 1. Defendant Robert Kirkman is a comic book author and a television and film producer.  Declaration of Robert Kirkman ("Kirkman Decl.") ¶¶ 1-2. | 1. Undisputed. | | |
| 2. Robert Kirkman, LLC is Kirkman's loan-out company.  Kirkman Decl. ¶ 3. | 2. Undisputed. | | |
| 3. Kirkman is the co-creator and author of the comic book and graphic novel series *Invincible*, which was first published in January 2003.  Kirkman Decl. ¶ 4. | 3. Disputed. | Kirkman, Walker and Crabtree are the co-creators and co-authors of the Work. Scott Decl. Ex. 16  [Response to SROG Nos. 1-2]. | Whether Crabtree also co-created Invincible under Copyright Law is a legal conclusion and argumentative.

Objection: legal conclusion (FRE 701, Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1059 (9th Cir. 2008)), argumentative (FRE 403) |
| 4.  Kirkman co-created *Invincible* with artist Cory Walker.  Kirkman Decl. ¶ 5. | 4. Disputed. | Kirkman, Walker and Crabtree are the co-creators and co-authors of the Work. Scott Decl. Ex. 16  [Response to SROG Nos. 1-2]. | See reply to UF 3. |
| 5.  Plaintiff William Crabtree was a colorist on some issues of *Invincible*.  Kirkman Decl. ¶ 6. | 5. Disputed. | Kirkman, Walker and Crabtree are the co-creators and co-authors of the Work.  Crabtree was much more than simply a "colorist on some issues of Invincible," as he created the foundational design and artistic elements of the Work, including the unique color schemes and arrangements still in use on the Work to this day.  Scott Decl. Ex. 16 [Response to SROG Nos. 1-2]. | There is no dispute of fact.  Crabtree was the colorist on some issues of *Invincible*, which he states in Ex. 16, p. 3:28-4:1.  Crabtree's response is a legal conclusion and argumentative.

Objection: legal conclusion (FRE 701, Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1059 (9th Cir. 2008)), argumentative (FRE 403) |
| 6. In the comic book industry, an author writes the story and dialogue, and the art on the pages is typically created in steps.  A penciller draws the images, an inker traces the images and adds additional detail, a letterer adds dialogue to word balloons, and then a colorist adds colors.  Declaration of Allen B. Grodsky ("Grodsky Decl."), ¶ 2, Ex. 4, Deposition Transcript of Robert Kirkman ("Kirkman Depo.") 24:2-25:20. | 6.  Disputed. | The process of creation of comic books and, in particular, Invincible, is much more collaborative than this indicates with the author, artist and colorist providing continuous and ongoing feedback to one another on the various elements of the work and engaging in a true "give and take" process and ultimately combing all elements into a unified whole. . Scott Decl. Ex. 16  [Response to SROG Nos. 1-2]; Ex. 14 [Crabtree DT 65:8-75:18]. | There is no dispute of fact.  The fact refers to the typical process.  Crabtree's response is a legal conclusion and argumentative.

Objection: legal conclusion (FRE 701, Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1059 (9th Cir. 2008)), argumentative (FRE 403) |
| 7. Crabtree was the third person to work as the colorist on *Invincible* and eventually colored Issues 1 through 50.   Kirkman Decl. ¶ 6; Kirkman Depo. 17:12-18, 22:16-24, 45:24-46:1. | 7.  Undisputed that Crabtree was the colorist on Issues 1 through 50, but disputed that Crabtree was the third colorist on Invincible. | Crabtree was the colorist on the very first issue and developed the foundational concepts for the color schemes and arrangements used throughout the Work as a whole.  Scott Decl. Ex. 16 [Response to SROG Nos. 1-2]. | There is no dispute of fact.  The cited evidence proves that, though Crabtree colored the first issue, two other people colored *Invincible* before Crabtree, and Crabtree offers no proof to the contrary. |
| 8. Beginning with the first issue, for each issue of *Invincible* for which Crabtree provided coloring services, Kirkman and Walker were credited as "Creators" of *Invincible*, but Crabtree was credited below them as "Colorist."  Kirkman Decl. ¶ 7 & Ex. 1. | 8. Disputed. | The cover and interior credit pages identify with equal billing and equal prominence Kirkman, Walker and Crabtree.  Scott Decl. Ex. 22 [Invincible Covers]; Kirkman Decl. Ex. 1. | There is no dispute of fact.  Crabtree does not dispute that the pages cited as Exhibit 1 refer to Kirkman and Walker as "creators" but Crabtree as "colorist." |
| 9. Crabtree was never listed as a co-creator of *Invincible*.  Kirkman Decl. ¶ 7 & Ex. 1. | 9. Disputed. | The cover and interior credit pages identify with equal billing and equal prominence Kirkman, Walker and Crabtree.  Scott Decl. Ex. 22 [Invincible Covers]; Grodsky Decl. Ex. 1. | There is no dispute of fact.  Crabtree does not dispute that he was never listed as a "co-creator." |
| 10. The issues also reflect that the copyright to *Invincible* is owned by Kirkman and Walker, none of them list Crabtree as copyright owner.  Kirkman Decl. ¶ 8 & Ex. 1. | 10.  Disputed. | The cover and interior credit pages identify with equal billing and equal prominence Kirkman, Walker and Crabtree.  Scott Decl. Ex. 22 [Invincible Covers]; Kirkman Decl. Ex. 1. | There is no dispute of fact.  Crabtree does not dispute that the issues attached as Exhibit 1 list Kirman and Walker as owners of the copyright to *Invincible*, but not Crabtree. |
| 11. Crabtree testified at his deposition that he was sent physical copies of every issue of *Invincible* he worked on as well as copies of the trade paperbacks and hard cover compilations.  Declaration of Tim B. Henderson ("Henderson Decl.") ¶ 2 & Ex. 6, Deposition of William Crabtree ("Crabtree Depo.") 111:17-112:11. | 11.  Undisputed that Crabtree testified that he received copies of the issues of Invincible that he worked on, but disputed that this has any relevance to the statute of limitations issues as Kirkman has not provided any evidence as to when Crabtree received these copies. | | There is no dispute of fact, and Kirkman did indeed present evidence as to the timing of when Crabtree received the physical copies.  Crabtree testified that he received each issue before publication and  he received about 20 copies after publication.  Ex. 6, p. 111:8-112:6 |

| | | | |
|---|---|---|---|
| 12. On or about July 14, 2005, Crabtree signed a Certificate of Authorship for his services on *Invincible*. Crabtree Depo. 130:5-17 & Henderson Decl. Ex. 8 (marked as Crabtree Depo. Ex. 20). | 11. Disputed. | The Certificate of Authorship was not in exchange for Crabtree's services. Additionally, disputed that the Certificate of Authorship is valid in any respect as it was procured by fraud and is regardless legally invalid as it was never signed by Kirkman and was presented to Crabtree long after Crabtree had made his contributions to the Work. Scott Decl. Ex. 14 [Crabtree DT 130:5-133:25]; Ex. 15 [Kirkman DT 41:5-18]; Ex. 17, 18 [Kirkman RFA Response Nos. 2-3, 5]. | There is no dispute of fact. The fact is that Crabtree signed the Certificate on or about July 14, 2005. Crabtree's response is irrelevant legal conclusions and argument.<br><br>Objection: legal conclusion (FRE 701, Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1059 (9th Cir. 2008)), argumentative (FRE 403) |
| 13. The Certificate of Authorship includes clauses stating that the services rendered by Crabtree were on a work-for-hire basis, deemed Kirkman the "sole author" of *Invincible*, and "owner of all rights of every kind or nature." See supra UF No. 12. | 12. Undisputed that document includes provisions that purport to provide for this, but DISPUTED that this represents the full context and scope of the document and DISPUTED that the Certificate of Authorship is valid in any respect. | The Certificate of Authorship was procured by fraud and is regardless legally invalid as it was never signed by Kirkman and was presented to Crabtree long after Crabtree had made his contributions to the Work. Scott Decl. Ex. 14 [Crabtree DT 130:5-133:25]; Ex. 15 [Kirkman DT 41:5-18]; Ex. 17-18 [Kirkman RFA Response Nos. 2-3, 5]. | There is no dispute of fact. Crabtree admits the Certificate includes the cited portions. Crabtree's response is irrelevant legal conclusions and argument.<br><br>Objection: legal conclusion (FRE 701, Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1059 (9th Cir. 2008)), argumentative (FRE 403) |
| 14. The Certificate of Authorship also contains an assignment that Crabtree "irrevocably and absolutely assign[s] to [Robert Kirkman, LLC] all of [Crabtree's] rights (copyrights, rights under copyright and otherwise, whether known now or in the future) and all renewals and extensions thereof as may exist now or in the future, in and to the Material throughout the universe and in perpetuity." See supra UF No. 12. | 13. Undisputed that this accurately quotes an excerpt from the document, but DISPUTED that this represents the full context and scope of the document and DISPUTED that the Certificate of Authorship is valid in any respect. | The Certificate of Authorship was procured by fraud and is regardless legally invalid as it was never signed by Kirkman and was presented to Crabtree long after Crabtree had made his contributions to the Work. Scott Decl. Ex. 14 [Crabtree DT 130:5-133:25]; Ex. 15 [Kirkman DT 41:5-18]; Ex. 17-18 [Kirkman RFA Response Nos. 2-3, 5]. | See reply to UF 13. |
| 15. The Certificate of Authorship also stated that Kirkman could "revise, change, modify, dramatize, fictionalize, add material to and/or remove material from the Material as [Robert Kirkman, LLC] shall in its sole discretion deem appropriate, and to use, exploit and advertise the Material, in any form, manner and media, whether now known or hereafter devised, without any further obligation whatsoever to [Crabtree] or any person or entity claiming through or on behalf of [Crabtree]." See supra UF No. 12. | 14. Undisputed that this accurately quotes an excerpt from the document, but DISPUTED that this represents the full context and scope of the document and DISPUTED that the Certificate of Authorship is valid in any respect. | The Certificate of Authorship was procured by fraud and is regardless legally invalid as it was never signed by Kirkman and was presented to Crabtree long after Crabtree had made his contributions to the Work. Scott Decl. Ex. 14 [Crabtree DT 130:5-133:25]; Ex. 15 [Kirkman DT 41:5-18]; Ex. 17-18 [Kirkman RFA Response Nos. 2-3, 5]. | See reply to UF 13. |
| 16. Crabtree continued to color *Invincible* after signing the Certificate of Authorship. The final issue he colored, Issue 50, was published on June 11, 2008. Crabtree Depo. 108:10-15, Kirkman Decl. ¶ 9 & Ex. 1, p. 13. | 15. Undisputed. | | |
| 17. In February 2005, Kirkman entered a deal with Paramount for the possible creation of a motion picture based on *Invincible*. Kirkman Decl. ¶ 10. | 17. Undisputed. | | |
| 18. Around this time, Kirkman made a payment to Crabtree from a portion of the Paramount payment. Kirkman Depo. 77:12-78:17. | 18. Undisputed. | | |
| 19. In November 2007, Kirkman entered a deal with MTV for the creation of a motion comic based on *Invincible*. Kirkman Decl. ¶ 11. | 19. Undisputed. | | |
| 20. Around this time, Kirkman made a payment to Crabtree. Kirkman Depo. 99:21-23. | 20. Disputed. | This payment was specifically and expressly made by Kirkman to Crabtree for the MTV Motion Comic. Indeed, when remitting the payment, Kirkman stated "This is for the motion comic." Scott Decl. Ex. 14 [Crabtree DT 118:5-119:16] | There is no dispute of fact. The fact is that Kirkman made a payment to Crabtree around this time. Crabtree's response is superfluous and argumentative.<br><br>Objection: argumentative (FRE 403) |
| 21. On March 16, 2012 at 4:12 p.m., Crabtree wrote an email to Kirkman stating: "hey, i see invincible back issues are available on comixology. shouldn't i be getting revenue for the first 50 issues that are being sold on there? this seems similar to the mtv motion comics, which i received my share of." Crabtree Depo. 152:18-25; Henderson Decl. Ex. 9 (marked as Depo. Ex. 21, CRABTREE0003-4); Henderson Decl. ¶ 7, Ex. 11 (Crabtree Resp. to RFA No. 4). | 21. Undisputed. | | |

| | | | |
|---|---|---|---|
| 22. On March 17, 2012 at 12:42 a.m., Kirkman wrote an email to Crabtree stating: "The digital issues are reprints no different than the TPBs. You don't get any royalties on single issues past your page rate. You didn't get 'your share' of the MTV motion comics. I gave you a bonus because it was an adaptation directly using your work. You signed a work for hire contract on *Invincible*. I've honored that contract. I'm sorry to be so blunt, I just want to make sure we're on the same page here." See supra UF No. 21. | 22. Undisputed. | | |
| 23. On March 17, 2012 at 12:56 a.m., Crabtree wrote an email to Kirkman stating: "that's bullshit, man. you can couch it any way it makes you feel better." See supra UF No. 21. | 23. Undisputed. | | |
| 24. On March 17, 2012 at 1:06 a.m., Kirkman wrote an email to Crabtree stating: "I'm sorry you feel that way, Bill. But I don't owe you anything. I paid you for your work and even paid you advances for years when you needed money sooner. I did right by you. You did the work with the understanding that you weren't getting royalties beyond your page rate. I find it odd that you'd complain about that now. You did work that you were paid for. What's suddenly different?" See supra UF No. 21. | 24. Undisputed. | | |
| 25. On March 17, 2012 at 1:07 a.m., Crabtree wrote an email to Kirkman stating: "can we talk person to person?" See supra UF No. 21. | 25. Undisputed. | | |
| 26. Crabtree had one oral conversation with Kirkman from January 1, 2009 to the present, which occurred on March 17, 2012, the date of the emails referenced in facts 22-25. Henderson Decl. ¶ 8, Ex. 12 (Crabtree Resp. to SPI 11). | 26. Undisputed. | | |
| 27. Crabtree stated that during the March 17, 2012 telephone call "Crabtree contended that the digital distribution of *Invincible* constituted single issue sales of the work to which he was entitled to a percentage of proceeds generated above and beyond the $40 per page minimum. Kirkman disagreed, contending that the digital distribution of *Invincible* constituted 'reprints' which, according to Kirkman, were not considered 'single issue sales' under the parties' agreement and that Crabtree had purportedly signed what Kirkman described as a 'work for hire contract' that governed copyright ownership of and revenues generated concerning *Invincible* that was not otherwise covered by the parties' agreement. Kirkman analogized the digital distribution of the static comics to the reissues of *Invincible* in the motion comic format, to which Kirkman contended that payments to Crabtree were simply 'bonuses,' not payments pursuant to the parties' agreement. Kirkman held to his position with respect to the digital distribution of *Invincible* not constituting single issue sales under the parties' agreement. Kirkman told Crabtree that he 'felt bad' because Kirkman was now very successful, but that he would attempt to get Crabtree additional colorist opportunities on other projects on which Kirkman was involved." Henderson Decl. ¶ 8, Ex. 12 (Crabtree Resp. to SPI 12). | 27. Undisputed. | | |
| 28. Separately, in February 2012 shortly before Crabtree sent his email, Kirkman had been sued by Tony Moore, who had worked as an artist on another Kirkman comic, The Walking Dead. Complaint ¶ 2 & n.1 (Dkt. 1) & Request for Judicial Notice ("RJN") Ex. 13. | 28. Undisputed. | | |
| 29. On March 17, 2012 at 1:02 a.m., Crabtree wrote an email to Kirkman stating: "this is the same work for hire contract tony is suing you over at the momen[t], correct?" Kirkman Decl. ¶ 12, Ex. 2 (RK01906). | 29. Undisputed. | | |
| 30. And in his Complaint in this case, Crabtree expressly connected his claims and Moore's earlier claims against Kirkman. Crabtree alleged that "Kirkman was sued by Mr. Moore in 2012 based on allegations of Kirkman fraudulently wresting Mr. Moore's copyright ownership rights in The Walking Dead series that are shockingly similar to Mr. Crabtree's allegations herein." Complaint ¶ 2 n.1. | 30. Disputed that Crabtree "connected his claims and Moore's earlier claims against Kirkman." | The Complaint references the Moore lawsuit against Kirkman, but merely to show Kirkman's propensity for deceit and exploitation of artists. (Complaint ¶ 2, fn. 1). | There is no dispute. Crabtree admits his Complaint references Moore's earlier lawsuit. |
| 31. Mr. Moore was represented in that case by Devin McRae, Crabtree's counsel here. RJN Ex. 13, p. 1. | 31. Undisputed. | | |

| | | | |
|---|---|---|---|
| 32. On August 25, 2020 at 3:30 p.m., Crabtree wrote an email to Kirkman stating: "Please don't ignore me. If you don't have time to deal with this, please refer me to someone who does. I am well within my rights to request a copy of whatever agreement it was I signed. I'd rather not have this out publicly, but if you don't respond I won't have much choice." Kirkman Depo. 85:2-7 & Grodsky Decl. Ex. 5 (marked as Kirkman Depo. Ex. 36). | 32. Disputed. | The referenced email was not sent on August 25, 2020. Grodsky Decl. Ex. 5. | There is no material dispute of fact but an irrelevant typographical error. The referenced email was written on August 26, not August 25, but the difference is immaterial. |
| 33. On August 26, 2020 at 6:10 p.m., Kirkman wrote an email to Crabtree stating: "I'm not ignoring you. My lawyers are working remotely and it's taking some time to dig this up. With texts accusing me of 'tricking' you into signing a contract and phrases like 'have this out publicly' I am curious what's going on with you." See supra UF No. 32. | 33. Undisputed. | | |
| 34. On August 26, 2020 at 6:25 p.m., Crabtree wrote an email to Kirkman stating: "Nothing particularly going on. When you gave me that to sign you said, 'our deal's the same, it's just that Hollywood people don't want to deal with multiple creators so this just says you don't own *invincible* '. I took your word for it and thought nothing more if it. Then, we talked 8 years ago or whenever that was and I referenced the money you gave me for the mtv motion comic. I said 'you gave me my share for that' and you said, 'that wasn't your share, that was a bonus, you signed that work for hire agreement, remember?' . So that's what I mean by you tricking me into signing it. I apologize for the tone of my previous text, it wasn't helpful. The truth is I have a lot of bottled up feelings about all of this and it came out when I made the decision to broach the subject with you. As far as having it out in public, what I meant is that if I couldn't address this with you directly, I would at least have the option of telling my story publicly. This is that story: My deal on *invincible* was 20% of single issue sales and 10% of any ip money. You frequently told me I could trust you and that you'd sign something to the effect of the above mentioned deal. I was foolish not to take you up on that. In my opinion some sort of profit sharing of money from the ip would be the fair and honorable thing to do, considering our initial verbal agreement. When I realized that I had unknowingly signed a work for hire agreement, I assumed that you would try to avoid sharing any profit with me. Perhaps I was mistaken in that assumption, I don't know. We didn't part in the best of terms, but I would love to discuss all of this in a civil way. I regret the snarky tone of my text. Having said all of that, I do intend to have a lawyer look at what I signed and tell me what my options are. If you want to settle this in a way that seems fair to me I'm cool with that too." See supra UF No. 32. | 34. Undisputed. | | |
| 35. On August 31, 2020 at 10:11 a.m., Kirkman wrote an email to Crabtree stating: "See the attached signed agreement. I'm sorry you're upset over this issue. I can see why you are, from your point of view, but you need to understand this was 16 years ago whenever these conversations would have taken place. I have never given a colorist a stake in media rights on ANY project I've ever done in my entire career. I remember talking to Cory at the time about how weird it was the Phil and Andy gave you that deal on FireBreather. I can only assume you're misremembering conversations about FireBreather and applying them to *Invincible* ." See supra UF No. 32. | 35. Undisputed. | | |
| 36. On August 31, 2020 at 11:43 a.m., Crabtree wrote an email to Kirkman stating: "Ok I appreciate you getting back to me. One of us is certainly misremembering things. Do you remember giving me a portion of the option money for *invincible* the last time it was optioned?" See supra UF No. 32. | 36. Undisputed. | | |
| 37. On August 31, 2020 at 11:56 a.m., Kirkman wrote "I remember giving you a bonus while you were still coloring the book, as I explained on the phone 8 years ago when we spoke. I wish you well." See supra UF No. 32. | 37. Undisputed. | | |
| 38. In 2006, Kirkman sent Crabtree emails about the creation of toys based on an *Invincible* character. Kirkman Decl. ¶ 13, Ex. 3 (RK01398-400). | 38. Disputed. | Crabtree was copied on an email wherein Kirkman discussed the design for potential toys relating to Invincible characters, but there were no communications about the actual creation, manufacture or sale of any such toys. Kirkman Decl. Ex. 3 (RK01398-400). | There is no dispute of fact. The fact is that Crabtree was copied on emails about the creation of toys based on *Invincible* . Crabtree does not dispute this and, in fact, his expert's report included revenues from sales of *Invincible* merchandise. |

| | | | |
|---|---|---|---|
| 39. Crabtree was also aware of hardcover versions and collections of *Invincible* comic books. Crabtree colored the cover of several of the hardcover editions. A 2009 email shows Crabtree emailing Kirkman and Ryan Ottley (the artist who replaced Walker on *Invincible*) and asking when Kirkman wanted Crabtree to be done coloring the covers for the hardcovers. Crabtree Depo. 108:16-109:1 & Henderson Decl. Ex. 7 (marked as Crabtree Depo. Ex. 18, RK01696). | 39. Undisputed. | | |
| 40. Crabtree also provided photographs for the biographical section. Kirkman Decl. ¶ 14. | 40. Undisputed. | | |
| 41. Crabtree testified at his deposition about categories of payments he received on *Invincible* and did not mention being paid for toys. Crabtree Depo. 118:5-119:10. | 41. Undisputed. | | |
| 42. Crabtree also testified repeatedly at his deposition that he was not given and had not been paid royalties for trade paperbacks or hardcovers. Crabtree Depo. 53:7-24, 109:2-14, 111:5-7. | 42. Undisputed. | | |
| 43. On January 9, 2022, Crabtree filed suit alleging claims for declaratory relief, promissory fraud, breach of oral contract, common count, and accounting. Complaint, Dkt. 1. | 43. Undisputed | | |

**Conclusions of Law**

| Conclusions of Law | Relevant Facts |
|---|---|
| Crabtree's first claim for declaratory relief is barred by the statute of limitations. | Facts 8-42 |
| Crabtree's second claim for promissory fraud is barred by the statute of limitations. | Facts 8-42 |
| Crabtree's third claim for declaratory relief is barred by the statute of limitations. | Facts 8-42 |
| Crabtree's fourth claim for breach of oral contract is barred by the statute of limitations. | Facts 8-42 |
| Crabtree's fifth claim for common counts, money had and received, is barred by the statute of limitations. | Facts 8-42 |
| Crabtree's sixth claim for accounting is barred by the statute of limitations. | Facts 8-42 |
| The continuing violation and continuing accrual doctrine does not apply to save Crabtree's claims. | Facts 8-42 |
| Equitable tolling does not apply to save Crabtree's claims. | Facts 8-42 |
| Crabtree is not entitled to a share of royalties from sales of trade paperbacks of *Invincible*. | Facts 8-42 |