**Plaintiff's Joint Statement of Uncontroverted Facts and Genuine Disputes**
Crabree v. Kirkman et al., Case No. 2:22-cv-00180-MEMF (AFMx)

| Undisputed Fact | Status | Opposition |
|---|---|---|
| 44. Kirkman, Crabtree and Cory Walker collaborated to c-create the comic series *Invincible*. Scott Decl. Ex. 16 [Response to SROG Nos. 1-2]. | Objectionable. | There is no dispute of fact. Whether Crabtree co-created Invincible under Copyright Law is a legal conclusion.<br><br>Objection: legal conclusion (FRE 701, Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1059 (9th Cir. 2008)) |
| 45. Kirkman provided the plot and dialogue, Walker provided the drawings and Crabtree provided the color which were combined into a finished comic book work. Scott Decl. Ex. 16 [Response to SROG Nos. 1-2]. | Objectionable. | There is no dispute of fact. Whether Crabtree co-created Invincible under Copyright Law is a legal question and irrelevant to the determination of Kirkman's statute of limitations defense.<br><br>Objection: legal conclusion (FRE 701, Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1059 (9th Cir. 2008)) |
| 46. Crabtree provided the coloring for the first 50 issues of the *Invincible* comic books series. Scott Decl. Ex. 16 [Response to SROG Nos. 1-2]. | Undisputed. | |
| 47. Crabtree's artistic contributions to the *Invincible* comic book series established the "look" and "feel" of the work and which supported the narrative and showcased the clean and intentionally spare artwork. Scott Decl., Ex. 14 [Crabtree DT 71:2-75:18]. Ex. 16 [Response to SROG Nos. 1-2]. | Objectionable. | There is no dispute of fact. Whether Crabtree co-created Invincible under Copyright Law is a legal question and irrelevant to the determination of Kirkman's statute of limitations defense.<br><br>Objection: legal conclusion (FRE 701, Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1059 (9th Cir. 2008)) |
| 48. In consideration of Crabtree's co-authorship and co-ownership of *Invincible*, Kirkman and Crabtree agreed that Crabtree was to receive 20% of single issue sales of the Work with a minimum of $40 per page and 10% of any revenues generated from other film or television commercial exploitation of the Work together with any derivative projects based on the Work and any allied or ancillary rights in the Work. Scott Decl. Ex. 14 [Crabtree DT 49:8-16]; Ex. 16 [Crabtree Response to SROG No. 5].. | Immaterial and undisputed for purposes of this motion only. | Undisputed for purposes of this motion only that the stated fact is Crabtree's subjective understanding of his agreement with Kirkman. The cited deposition transcript and interrogatory response describe the fact as being Crabtree's understanding. Crabtree's subjective understanding of his agreement with Kirkman is immaterial for purposes of Kirkman's statute of limitations defense.<br><br>Objection: irrelevant (FRE 401, Straughter v. Concord Music, 2020 WL 6821313, at *5 (C.D. Cal. 2020); Wilshire Westwood Assocs. v. Atl. Richfield Co., 20 Cal.App.4th 732, 740 (1993); Kline v. Turner, 87 Cal.App.4th 1369, 1374 (2001)) |
| 49. Kirkman contends that his agreement with Crabtree was that Crabtree was to be paid $40 per page or 20% of profits from sales of single issues of *Invincible*, whichever was higher. Scott Decl. Ex. 19 [Kirkman SROG Response No. 7] | Undisputed. | |

| | | |
|---|---|---|
| 50. In July 2005, Kirkman approached Crabtree at a comic convention without any advance notice and presented him with a pre-printed document entitled "Certificate of Authorship," and explianed that he was in final discussions with Hollywood studios to license *Invincible* and he needed to have Crabtree sign the document immediately then and there, as the studios told Kirkman that having the Work represented by a single creator would increase its commercial viability and result in higher benefits for both Kirkman and Crabtree.  Scott Decl. Ex. 14 [Crabtree DT 130:5-133:25]. | Objectionable, but undisputed for purposes of this motion only. | Undisputed that Kirkman asked Crabtree to sign the Certificate of Authorship in July 2005 at a comic convention. The remaining characterization of the exchange at the time of signing the Certificate is argumentative, and does not accurately quote the referenced deposition testimony, but this is immaterial to Kirkman's statute of limitations defense.<br><br>Objection: argumentative (FRE 403) |
| 51. Kirkman told Crabtree prior to his signing the Certificate of Authorship that Crabtree's rights and financial interest in the Work would remain unchanged if he signed the Certificate of Authorship, and that the document would simply allow Kirkman to market the licensure of the Work more easily resulting in greater profits for both of them.  Scott Decl. Ex. 14 [Crabtree DT 130:5-133:25]. | Objectionable, but undisputed for purposes of this motion only. | Crabtree's characterization of the exchange is argumentative, and does not accurately quote the referenced deposition testimony, but this is immaterial to Kirkman's statute of limitations defense.<br><br>Objection: argumentative (FRE 403) |
| 52. Upon presenting the Certificate of Authorship to Crabtree, Kirkman stated: "Our deal stays the same.  This is just for the Hollywood people so we can get paid."  Scott Decl. Ex. 14 [Crabtree DT 130:5-133:25]; Ex. 15 [Kirkman DT 41:5-18]. | Undisputed for purposes of this motion only. | |
| 53. Crabtree expressly relied upon Kirkman's representations in signing the Certificate of Authorship.  Scott Decl. Ex. 14 [Crabtree DT 130:5-133:25]. | Objectionable, immaterial, and undisputed for purposes of this motion only. | Objection: irrelevant (FRE 401), legal conclusion (FRE 701, Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1059 (9th Cir. 2008)) |
| 54. Crabtree was not given a meaningful opportunity to review the Certificate of Authorship.  Scott Decl. Ex. 14 [Crabtree DT 130:5-133:25]. | Objectionable, immaterial, and undisputed for purposes of this motion only. | Objection: irrelevant (FRE 401), legal conclusion (FRE 701, Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1059 (9th Cir. 2008)) |
| 55. Crabtree was not provided with a copy of the Certificate of Authorship after he signed it until August 2020.  Scott Decl. Ex. 14 [Crabtree DT 130:5-133:25]. | Immaterial, but undisputed for purposes of this motion only. | |
| 56. No consideration was paid to Crabtree in connection with his signing the Certificate of Authorship.  Scott Decl. Ex. 14 [Crabtree DT 130:5-133:25] | Immaterial and objectionable. | There is no dispute of fact. Whether there was consideration for the Certificate of Authorship is a legal conclusion.  But the validity of the Certificate of Authorship is immaterial to Kirkman's statute of limitations defense.<br><br>Objection: irrelevant (FRE 401),  legal conclusion (FRE 701, Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1059 (9th Cir. 2008)) |
| 57. The Certificate of Authorship was never signed by Robert Kirkman or Robert Kirkman LLC.  Scott Decl. Ex. 17-18 [Kirkman RFA Response Nos. 2-3]. | Undisputed for purposes of this motion only. | |
| 58. The Certificate of Authorship was presented to and signed by Crabtree several years after Crabtree had already provided his contributions to the Work.  Scott Decl. Ex. 17-18 [Kirkman RFA Response Nos. 5]. | Immaterial and objectionable. | There is no dispute of fact.  Whether Crabtree had already provided his contributions to Invincible before signing the Certificate of Authorship is a legal conclusion and an indisputably incorrect one because Crabtree continued providing services after signing it.  UF 16.  But the validity of the Certificate of Authorship is immaterial to Kirkman's statute of limitations defense.<br><br>Objection: irrelevant (FRE 401), legal conclusion (FRE 701, Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1059 (9th Cir. 2008)) |

| | | |
|---|---|---|
| 59. Kirkman's counsel in the Moore v. Kirkman lawsuit is the same attorney and law firm that is representing him in the instant litigation. Scott Decl. Ex. 23 [Kirkman Answer to Complaint]. | Undisputed. | |
| 60. After execution of the Certificate of Authorship in 2005, Kirkman continued to pay Crabtree pursuant to their financial arrangment - i.e. 20% of single issue sales and 10% of other commercial exploitation of the Work. Scott Decl. Ex. 14 [Crabtree DT 118:6-119:10; 122:14-123:14]. | Objectionable. | The cited deposition testimony does not support the stated fact. Crabtree testified that he did not know whether amounts he was paid were consistent with his subjective interpretation of his agreement with Kirkman. For example, Crabtree testified that he "can't really speak to the accuracy of that figure being 20 percent of single issue sales or not" (Ex. 14, Crabtree Depo. 118:12-14), "I assumed at the time but now question to be 10 percent of the Paramount option" (Ex. 14, Crabtree Depo. 118-19-23), and that when Crabtree told Kirkman he thought he had been given "my share" on MTV motion comics, Kirkman said "You signed a work-for-hire agreement. That was a bonus." (Crabtree Depo. 120:11-18). There is no proof Crabtree's interpretation of the agreement was ever performed.<br><br>Objection: lacks personal knowledge (FRE602), legal conclusion (FRE 701, Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1059 (9th Cir. 2008)), argumentative (FRE 403) |
| 61. Kirkman did not provide Crabtree with accounting statements or other disclosures regarding the revenues generated by the Work and Crabtree relied on Kirkman's representations as to what royalties Crabtree was owed under the parties' agreement. Scott Decl. Ex. 14 [Crabtree DT 118:6-119:10]. | Objectionable, immaterial, and undisputed for purposes of this motion only. | Undisputed for purposes of this motion that Kirkman did not provide accounting statements regarding revenues generated by Invincible, but that is immaterial to Kirkman's statute of limitation defense. Whether Crabtree relied on unnamed representations by Kirkman is a legal conclusion.<br><br>Objection: legal conclusion (FRE 701, Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1059 (9th Cir. 2008)) |
| 62. In March 2012, Crabtree became aware that single issues of *Invincible* were being sold in digital format on a website called "Comixology." Scott Decl. Ex. 14 [Crabtree DT 53:25-57:2] | Undisputed for purposes of this motion only. | |
| 63. The sale of digital issues of Invincible was not something that had been contemplated at the time of Kirkman and Crabtree's original contracting. Scott Decl. Ex. 14 [Crabtree DT 53:25-57:2]. | Undisputed for purposes of this motion only. | |
| 64. Crabtree's position on digital issue sales was that such sales were "single issue" sales and not "reprints" and that Crabtree should receive his 20% royalty on these digital sales. Scott Decl. Ex. 14 [Crabtree DT 53:25-57:2]. | Undisputed for purposes of this motion only. | |

| | | |
|---|---|---|
| 65. The March 2012 email communications between Crabtree and Kirkman relate exclusively to how to characterize digital issue sales under Crabtree and Kirkman's agreement - i.e. as single issue sales or as reprints. Scott Decl. Ex. 14 [Crabtree DT 54:19-55:7; 55:20-56:1; 119:17-121:7; 152:21-154:17]; Henderson Decl., Ex. 9 | Immaterial and objectionable. | There is no dispute of fact because Crabtree's subjective interpretation of the March 2012 email communications is irrelevant to Kirkman's statute of limitations defense because the test for the discovery rule is an objective, reasonable person standard, not a subjective standard. The text of the 2012 email communications is the best evidence of the content of those communications, not Crabtree's subjective interpretation of the emails.<br><br>Objection: irrelevant (FRE 401, Straughter v. Concord Music, 2020 WL 6821313, at *5 (C.D. Cal. 2020); Wilshire Westwood Assocs. v. Atl. Richfield Co., 20 Cal.App.4th 732, 740 (1993); Kline v. Turner, 87 Cal.App.4th 1369, 1374 (2001)), testimony about contents of document violates best evidence rule (FRE 1002, U.S. v. Valdovinos-Mendez, 641 F3d 1031, 1035 (9th Cir. 2011)), legal conclusion (FRE 701, Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1059 (9th Cir. 2008)) |
| 66. Kirkman's communictions in the March 2012 email communications did not constitute a repudiation of Crabtree and Kirkman's agreement or of Crabtree's copyright ownership in the Work. Scott Decl. Ex. 14 [Crabtree DT 54:19-55:7; 55:20-56:1; 119:17-121:7; 152:21-154:17]; Henderson Decl., Ex. 9. | Immaterial and objectionable. | See response to fact 65. |
| 67. The March 2012 email communications represent Kirkman affirming the parties agreement, stating that he has "honored [the parties'] agreement." Scott Decl. Ex. 14 [Crabtree DT 54:19-55:7; 55:20-56:1; 119:17-121:7; 152:21-154:17]; Henderson Decl., Ex. 9. | Immaterial and objectionable. | See response to fact 65. |
| 68. The March 2012 email communications contain no discussion about Crabtree's copyright ownership in the Work as a whole or his entitlement to motion picture or television royalties. Scott Decl. Ex. 14 [Crabtree DT 54:19-55:7; 55:20-56:1; 119:17-121:7; 152:21-154:17]; Henderson Decl., Ex. 9. | Immaterial and objectionable. | See response to fact 65. |
| 69. In a telephone conversation on or about March 17, 2012, Kirkman informed Crabtree that he did not agree that digital issue sales constitued single issue sales to which Crabtree was entitled to a 20% royalty, but stated that he "felt bad" and would try to get Crabtree colorist work on other projects with which Kirkman was involved, but this work never materialized. Henderson Decl. ¶ 8, Ex. 12 (Crabtree Resp. to SPI 12). | Undisputed for purposes of this motion only. | |
| 70. In August 2020, Crabtree learned that Amazon Prime was moving forward on its plan to launch an episodic series based on the Work. Scott Decl. Ex. 14 [Crabtree DT 55:8-19] . | Undisputed for purposes of this motion only. | |

| | | |
|---|---|---|
| 71.  Crabtree communicated with Kirkman between August 26 and 31, 2020, about Crabtree's entitlement to royalties in connection with the Amazon Prime series, but Kirkman repudiated the representations he had made to Crabtree to get Crabtree's signature on the Certificate of Authorship and informed Crabtree that Robert Kirkman LLC was the sole owner of the Work and that he was refusing to pay Crabtree any royalty payment in connection with the Amazon Prime series.  Scott Decl. Ex. 14 [Crabtree DT 55:8-57:2]; Grodsky Decl. Ex. 5. | Immaterial and objectionable. | Crabtree's subjective interpretation of the 2020 email communications is irrelevant to Kirkman's statute of limitations defense because the test for the discovery rule is an objection, reasonable person standard, not a subjective standard.  The text of the 2020 email communications is the best evidence of the content of those communications, not Crabtree's subjective interpretation of the emails.<br><br>Objection: irrelevant (FRE 401, Straughter v. Concord Music, 2020 WL 6821313, at *5 (C.D. Cal. 2020); Wilshire Westwood Assocs. v. Atl. Richfield Co., 20 Cal.App.4th 732, 740 (1993); Kline v. Turner, 87 Cal.App.4th 1369, 1374 (2001)), testimony about contents of document violates best evidence rule (FRE 1002, U.S. v. Valdovinos-Mendez, 641 F3d 1031, 1035 (9th Cir. 2011)), legal conclusion (FRE 701, Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1059 (9th Cir. 2008)) |
| 72.  Kirkman provided Crabtree with a copy of the Certificate of Authorship for the first time on August 31, 2020.  Scott Decl. Ex. 20 [8/31/2020 Email]; Ex. 15 [Kirkman DT 88:8-15]; Grodsky Decl. Ex. 5. | Disputed in part but immaterial. | Crabtree was provided a copy of the Certificate of Authorship when he signed it in 2005, so the stated fact is indisputably incorrect.  But that Crabtree was provided with a copy of the Certificate in 2020 is immaterial to Kirkman's statute of limitations defense. |
| 73.  The cover of the Invincible comics that Crabtree colored bear Crabtree's name in equal billing and equal prominence to Kirkman and Walker.  Scott Decl. Ex. 22; Ex. 21; Ex. 15 [Kirkman DT 64:6-15]. | Undisputed for purposes of this motion only but immaterial. | |
| 74.  Promotional copies of Invincible for the Amazon Prime series bear Crabtree's name on the cover with equal billing and equal prominence to Crabtree and Walker's.  Scott Decl. Ex. 21 ; Ex. 15 [Kirkman DT 64:6-15]. | Disputed in part but immaterial. | The cited deposition testimony does not confirm that the referenced cover page was used for the stated purpose.  But whether the copies were used for that purpose or not is immaterial to Kirkman's statute of limitations defense. |
| 75.  Kirkman continued to pay Crabtree pursuant to their financial agreement after execution of the Certificate of Authorship, including with respect to a Paramount film option and an MTV motion comic.  Scott Decl. Ex. 14 [Crabtree DT 118:6-119:10; 122:14-123:14]. | Objectionable. | The cited deposition testimony does not support the stated fact.  Crabtree testified that he did not know whether amounts he was paid were consistent with his subjective interpretation of his agreement with Kirkman.  For example, Crabtree testified that he "can't really speak to the accuracy of that figure being 20 percent of single issue sales or not" (Ex. 14, Crabtree Depo. 118:12-14), "I assumed at the time but now question to be 10 percent of the Paramount option" (Ex. 14, Crabtree Depo. 118-19-23), and that when Crabtree told Kirkman he thought he had been given "my share" on MTV motion comics, Kirkman said "You signed a work-for-hire agreement. That was a bonus." (Crabtree Depo. 120:11-18).  There is no proof Crabtree's interpretation of the agreement was ever performed.<br><br>Objection: lacks personal knowledge (FRE 602), legal conclusion (FRE 701, Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1059 (9th Cir. 2008)) |