Devin A. McRae, SBN 223239
 *dmcrae@earlysullivan.com*
Peter Scott, SBN 247786
 *pscott@earlysullivan.com*
EARLY SULLIVAN WRIGHT
 GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

Attorneys for Plaintiff
WILLIAM CRABTREE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM CRABTREE,<br><br>         Plaintiff,<br><br>      v.<br><br>ROBERT KIRKMAN, an individual; ROBERT KIRKMAN, LLC, a Kentucky limited liability company, and DOES 1-10, inclusive.<br><br>         Defendants. | Case No. 2:22-cv-00180-MEMF (AFMx)<br><br>**PLAINTIFF WILLIAM CRABTREE'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Action Filed:   January 9, 2022<br>FPTC:         January 31, 2024<br>Trial Date:    February 20, 2024 |



# TABLE OF CONTENTS

Page

I.  CLAIMS AND DEFENSES ........................................................................5

   A.  Plaintiff's Claims .................................................................................5

   B.  Elements of Plaintiff's Claims ............................................................5

      1.  Declaratory Relief re Validity and/or Interpretation of Certificate of Authorship ...........................................................5

      2.  Breach of Oral Contract ............................................................6

      3.  Common Counts – Money had and Received ...................6

      4.  Accounting ................................................................................7

   C.  Key Evidence in Support of Each Claim .............................................7

      1.  Breach of Contract, Money had and Received and Accounting.................................................................................7

         a.  Crabtree, Kirkman and Cory Walker Co-Create the Work and Agree to Compensation Terms...............7

         b.  Kirkman Tricks Crabtree into "Assigning" his Copyright in the Works to Kirkman's Loan out Company for no Consideration and Affirms the Compensation Agreement ...........................................9

         c.  Crabtree Learns of the Amazon Prime Series and Through Discovery in this Litigation Finds that Kirkman has Failed to Pay Crabtree Hundreds of Thousands of Dollars Under Their Agreement ......10

      2.  Declaratory Relief re Validity and Interpretation of Certificate of Authorship ...........................................................12

   D.  Kirkman's Affirmative Defenses ........................................................13

      1.  Failure to State a Claim ............................................................13

      2.  Lack of Ownership ...................................................................13

      3.  Not Co-Authors ........................................................................13

      4.  Statute of Limitations ...............................................................13

      5.  Laches ........................................................................................13

      6.  Estoppel .....................................................................................13

      7.  Waiver .......................................................................................13

      8.  Unclean Hands ..........................................................................13

      9.  Justification ...............................................................................13

      10.  Consent ....................................................................................13

      11.  Failure to Mitigate .................................................................13

      12.  Punitive Damages Unconstitutional .....................................13

      13.  Performance ...........................................................................13

      14.  Plaintiff's Breach ..................................................................14

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

719191.1

15. Lack of Reliance .................................................................14
E. Elements of Kirkman's Affirmative Defenses .............................14
   1. Failure to State a Claim ...........................................14
   2. Lack of Ownership ...................................................14
   3. Not Co-Authors .........................................................14
   4. Statute of Limitations ...............................................14
   5. Laches ........................................................................15
   6. Estoppel .....................................................................15
   7. Waiver ........................................................................15
   8. Unclean Hands .........................................................16
   9. Justification .............................................................16
   10. Consent ......................................................................16
   11. Failure to Mitigate ...................................................16
   12. Punitive Damages Unconstitutional .......................16
   13. Performance ..............................................................16
   14. Plaintiff's Breach .....................................................16
   15. Lack of Reliance .......................................................16
F. Key Evidence in Opposition to Each Affirmative Defense ........16
G. Anticipated Evidentiary Issues ...................................................17
H. Issues of Law Germane to the Case .............................................18
II. BIFURCATION OF ISSUES ................................................................18
III. JURY TRIAL .........................................................................................18
IV. ATTORNEYS' FEES ...........................................................................18
V. ABANDONED CLAIMS OR ISSUES ...............................................18

719191.1

**PLAINTIFF WILLIAM CRABTREE'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Brea v. McGlashan*
  3 Cal. App. 2d 454 (1934) ........................................................................................7

*City of Goleta v. Super. Ct.*
  40 Cal. 4th 270 (2006) ............................................................................................15

*Couveau v. Am. Airlines, Inc.*
  218 F.3d 1078 (9th Cir. 2000) ...............................................................................15

*Danjaq LLC v. Sony Corp.*
  263 F.3d 942 (2001) ................................................................................................15

*In re Adobe Systems, Inc. Privacy Litigation*
  66 F. Supp. 3d 1197 (N.D. Cal. 2014) .....................................................................5

*In re GVF Cannery, Inc.*
  202 B.R. 140 (1996) ................................................................................................15

*Iqball v. Ashcroft*
  566 u.s. 662 (2009) .................................................................................................14

*Kay v. Kay*
  188 Cal. App 2d 214 (1961) ....................................................................................15

*Lincoln Nat'l Life Ins. Co. v. McClendon*
  230 F. Supp. 3d 1180 (C.D. Cal. 2017) ....................................................................6

*MedImmune, Inc. v. Genentech, Inc.*
  549 U.S. 118 (2007) ..............................................................................................5, 6

*Oasis W. Realty, LLC v. Goldman*
  51 Cal. 4th 811 (2011) ..............................................................................................6

*People v. Castillo*
  49 Cal. 4th 145 n. 10 (2010) ...................................................................................15

*S. Pac. Co. v. Bogert*
  250 U.S. 483 (1919) .................................................................................................15

*Stockton Mortg., Inc. v. Tope*
  233 Cal. App. 4th 437 (2014) ...................................................................................6

*Teselle v. McLoughlin*
  173 Cal. App. 4th 156 (2009) ...................................................................................7

*Title Ins. Co. v. State Bd. of Equalization*
  4 Cal. 4th 715 (1992) ................................................................................................6

*Wienke v. Smith*
  179 Cal. 220 (1918) .................................................................................................16

3

719191.1

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

**Statutes**

Cal. Civ. Code § 1550 ........................................................................................... 6

Cal. Code Civ. Proc. § 337 ................................................................................... 14

Cal. Code Civ. Proc. § 339 ................................................................................... 14

Cal. Code Civ. Proc. § 343 ................................................................................... 14



**PLAINTIFF WILLIAM CRABTREE'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Pursuant to Local Rule 16-4 of the United States District Court for the Central District of California, Plaintiff William Crabtree ("Crabtree" or "Plaintiff"), respectfully submits the below Memorandum of Contentions of Fact And Law (the "Memorandum").

## I.  CLAIMS AND DEFENSES

### A.    Plaintiff's Claims

Third Claim for Relief: Declaratory Relief regarding the validity and/or interpretation of the Certificate of Authorship

Fourth Claim for Relief: Breach of Oral Contract

Fifth Claim for Relief: Common Counts – Money Had and Received

Sixth Claim for Relief: Accounting[1]

### B.    Elements of Plaintiff's Claims

#### 1.    Declaratory Relief re Validity and/or Interpretation of Certificate of Authorship

"A claim for relief under the Declaratory Judgment Act requires a dispute that is (1) 'definite and concrete, touching the legal relatios of parties having adverse legal interests'; (2) 'real and substantial'; and (3) 'admit[ting] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts.'" *In re Adobe Systems, Inc. Privacy Litigation*, 66 F. Supp. 3d 1197, 1221 (N.D. Cal. 2014) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).  The central question is whether "'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal

---

[1]    The Court's Order Granting in Party Motion for Summary Judgment (ECF #36) adjudicated and dismissed in Defendants' favor Plaintiffs first claim for declaratory relief that he is a joint author of *Invincible*, second claim for relief for promissory fraud, third claim for declaratory relief to the extent it seeks to invalidate the Certificate of Authorship on the basis of fraud, and sixth claim for relief for accounting to the extent the accounting is based on authorship or copyright ownership.  (ECF #36.)

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

719191.1

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *MedImmune*, *supra*, 549 U.S. at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

### 2. Breach of Oral Contract

"The elements of a breach of oral contract claim are the same as those for a breach of written contract . . . ." *Stockton Mortg., Inc. v. Tope*, 233 Cal. App. 4th 437, 453 (2014). "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) the plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). For the existence of a contract, California law requires four elements: parties capable of contracting; their consent; a lawful object; and a sufficient cause or consideration. Cal. Civ. Code § 1550. Additionally,

> [c]ontracts can be created by the conduct of the parties, without spoken or written words. Contracts created by conduct are just as valid as contracts formed with words. Conduct will create a contract if the conduct of both parties is intentional and each knows, or has reason to know, that the other party will interpret the conduct as an agreement to enter into a contract.

CACI No. 305.

### 3. Common Counts – Money had and Received

"The common count is a general pleading which seeks recovery of money without specifying the nature of the claim." *Title Ins. Co. v. State Bd. of Equalization*, 4 Cal. 4th 715, 731 (1992). "A claim for Money Had and Received makes a defendant indebted to a plaintiff for money had and received by the defendant for the use of the plaintiff." *Lincoln Nat'l Life Ins. Co. v. McClendon*, 230 F. Supp. 3d 1180, 1190 (C.D. Cal. 2017). For a claim of money had and received, a plaintiff must show: "(1) defendant received money; (2) the money defendant received was for plaintiff's use; and (3) defendant is indebted to plaintiff." *Id.*

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW

719191.1

### 4. Accounting

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by accounting." *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009) (citing *Brea v. McGlashan*, 3 Cal. App. 2d 454, 460 (1934)).

### C. Key Evidence in Support of Each Claim

#### 1. Breach of Contract, Money had and Received and Accounting

##### a. Crabtree, Kirkman and Cory Walker Co-Create the Work and Agree to Compensation Terms

*Invincible* is a comic book and graphic novel series, first published in 2003. The Work tells the coming of age story of an eponymous superhero. The series gained critical acclaim and a devoted following as a result of the juxtaposition of extreme graphic violence with beautifully rendered and richly colored artwork and visuals.

At the outset, Defendant Robert Kirkman and third party Cory Walker provided the plot, characters, dialogue, themes, sequence of events and the drawings, and Plaintiff William Crabtree the color, and with that, the setting, costumes, mood, and overall look and feel. This collaboration turned into finished comic books, expressing the three authors' ideas through the collaborative combination of artwork, coloring and accompanying text. Walker ceased participation on the Work after Issue No. 7 and was replaced by a new artist, third party Ryan Ottley.

Crabtree, Walker and Kirkman jointly created the Work, with Walker creating the artwork, Crabtree creating the coloring and certain other artistic elements and Kirkman providing the accompanying text on the canonical first 50 issues of the series. Aside from jointly masterminding with Kirkman and Walker the foundational elements of the series, Crabtree's artistic contributions provided, among other things, the "look" and "feel" of the Work – a critically important element in intensely visual

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

719191.1

works such as comic books.  As Crabtree testified, his color work on Invincible "was to present things in an aesthetically pleasing way that would communicate the narrative and support the narrative but also, kind of, showcase the very clean, intentionally spare artwork."  Crabtree made deliberate and specific color choices in his own discretion, including as to the specific color schemes and arrangements for characters.  Crabtree's credit on the Work was featured prominently on the cover at equal billing and equal prominence to Kirkman and Walker.

In recognition of Crabtree's contributions to the Work, Kirkman and Crabtree agreed that Crabtree was to receive twenty percent (20%) of single issue sales of the Work with a minimum of $40 per page and ten percent (10%) of any revenues generated from other film or television commercial exploitation of the Work together with any derivative projects based on the Work and any allied or ancillary rights in the Work.  Kirkman does not dispute that he and Crabtree had an agreement and the Court has found, as a matter of law that an agreement exists between Kirkman and Crabtree.  However, Kirkman now contends that the agreement was actually that Crabtree was only to be paid "$40 per page or 20% of profits from sales of single issues of Invincible, whichever was higher."

Kirkman continued to pay Crabtree per their original financial arrangement at rates greater than $40 per page for single issue sales of the Work even after the execution of the Certificate of Authorship.  Indeed, the historical payment information produced by Kirkman in this litigation and for issues 45 through 50 (which are the only issues of the first 50 for which we have detailed information on the revenues received and amounts paid to Crabtree), reflects that Crabtree was paid approximately 20% of the revenues generated from single issue sales.

Additionally, after execution of the Certificate of Authorship, Kirkman paid Crabtree thousands of dollars in connection with licensure of the Work by MTV for a motion comic and by Paramount Pictures for an option for film and television rights on the Work. These amounts correspond to the 10% royalty owed to Crabtree on

719191.1

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

derivative works on *Invincible*.

Based on these repeated and ongoing payments, Crabtree believed that was honoring the parties' agreement and paying Crabtree what he was owed from the sales and exploitation of *Invincible*.   Kirkman, however, did not provide Crabtree with accounting statements or other disclosures about revenues generated by the Work. The Court has determined further, as a matter of law, that Crabtree relied upon Kirkman to understand what money Crabtree was owed.

> **b.**  **Kirkman Tricks Crabtree into "Assigning" his Copyright in the Works to Kirkman's Loan out Company for no Consideration and Affirms the Compensation Agreement**

In July 2005, Kirkman was attempting to license motion picture rights to certain comic series with which he was involved, including without limitation the Work, as well as numerous other titles including *The Walking Dead* comic series.  Without any advance notice, Kirkman approached Crabtree at the 2005 "Comic-Con" Convention in San Diego, California and presented Crabtree with a pre-printed document entitled "Certificate of Authorship," which purported to post-hoc characterize all of Crabtree's contributions to the Work as a purported "work for hire" – even though this was demonstrably untrue – and also assigning to Kirkman, LLC all of Crabtree's copyright ownership rights in and to the Work.

Kirkman told Crabtree that Kirkman was in final stage discussions with certain Hollywood studios to license the Work for motion picture production and that, as per the specific request of these studios, having the Work represented by a single creator would increase its commercial viability and result in higher monetary benefits for both Kirkman and Crabtree.

As the document was being presented to Crabtree after his contributions had already been completed on the Work and the financial arrangement had already been established, Kirkman told Crabtree that Crabtree's rights and financial interest in the

**PLAINTIFF WILLIAM CRABTREE'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

719191.1

Work would remain unchanged if he signed the Certificate of Authorship and that the document would simply allow Kirkman to market the licensure of the Work more easily, resulting in greater profits for both of them.  Kirkman specifically told Crabtree that Crabtree could "trust him."  Kirkman specifically told Crabtree: ***"Our deal [on the Work] stays the same.  This is just for the Hollywood people so we can get paid."*** Crabtree was given no opportunity to have the document reviewed by an attorney and Kirkman gave the impression that it needed to be signed then and there right away as Kirkman was attending meetings with Hollywood studios during the convention regarding the Work that would cease if the document was not signed.  Crabtree was never provided with a copy of what Kirkman had him sign.

Crabtree signed the Certificate of Authorship, specifically relying on the fact that, based on Kirkman's express representations, Crabtree's ownership of the Work and financial interest therein remained unchanged and that the document was a mere formality for Kirkman to market the Work.  No consideration was paid to Crabtree for signing the Certificate of Authorship.  Additionally, of note, and unbeknownst to Crabtree until being provided with a copy in August 2020, the Certificate of Authorship was never signed by Kirkman or Kirkman, LLC, which is a requirement for any work for hire agreement.

### c. Crabtree Learns of the Amazon Prime Series and Through Discovery in this Litigation Finds that Kirkman has Failed to Pay Crabtree Hundreds of Thousands of Dollars Under Their Agreement

In August 2020, Crabtree learned that Amazon Prime was moving forward on its plan to launch an episodic series based on the Work.  Crabtree promptly contacted Kirkman to discuss the particulars of the series and the license with Amazon Prime, but Kirkman ignored Crabtree's communications.  When Crabtree was finally able to communicate with Kirkman between August 26 and 31, 2020, Kirkman repudiated the representations he made to induce Crabtree's signature on the Certificate of

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

719191.1

Authorship 16 years prior and informed Crabtree that Kirkman LLC was the sole owner of the Work, that Crabtree had no ownership interest and was not entitled to any monetary proceeds generated from the Work as a result of the Certificate of Authorship. Crabtree also requested and was finally provided with a copy of the Certificate of Authorship in August 2020. Upon review of the Certificate of Authorship and after hearing Kirkman's repudiation of their agreement, Crabtree recognized that Kirkman had defrauded him into signing the Certificate of Authorship and that the document was not even valid on its face.

In the fall of 2021, Kirkman's representatives, likely recognizing that the Certificate of Authorship was defective and otherwise limited only to a motion picture, rather than a television series, contacted Crabtree and attempted to get him to execute a modified version of the original Certificate of Authorship, which Crabtree rejected. This lawsuit followed and was filed in U.S. District Court for the Central District of California on January 9, 2022.

Through discovery in this case, following Kirkman's production of the historical accounting records for the Work, Crabtree discovered that Kirkman had failed to pay Crabtree hundreds of thousands of dollars owed under the Agreement – even under Kirkman's own version of the Agreement. Specifically, Kirkman's own financial records have revealed that Crabtree is owed at least $590,713 in connection with single issue sales of *Invincible* (i.e. the 20% figure) and at least $118,906 in connection with other derivative works (i.e. the 10% figure), plus prejudgment interest. Kirkman's failure to pay these amounts – even under Kirkman's own version of the Agreement – constitutes a clear breach of the parties' Agreement. Further, due to the relationship formed between Kirkman and Crabtree under this Agreement and by virtue of Kirkman's exclusive control of the monies generated from the Work, an accounting is necessary for Crabtree to determine the exact amounts owed to him.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

719191.1

2.   **Declaratory Relief re Validity and Interpretation of Certificate of Authorship**

The Complaint seeks a judicial declaration that the Certificate of Authorship is invalid for lack of consideration and, even if supported by valid consideration, is limited exclusively to a motion picture derived from the Work.  With respect to the lack of consideration to support the Certificate of Authorship, Crabtree received absolutely nothing in return for his agreement.  Kirkman clearly and unequivocally admitted this in his deposition:

> Q.   You will see there, "For good and valuable consideration, receipt of which is hereby acknowledged."  Do you see that?
>
> A.   Yes.
>
> Q.   So my first question is what was the consideration for signing this document?  [Objection.]
>
> A.   It was just to establish chain of title.
>
> Q.   And that is the consideration?
>
> A.   With my limited understanding of how these things work.
>
> Q.   Was Crabtree given anything for signing this document?
>
> A.   No.
>
> Q.   Was he intended to receive anything for signing this document?
>
> A.   No.

Kirkman DT 44:23-45:21.  Absent valid consideration, the Certificate of Authorship is invalid.

Additionally, even if the Certificate of Authorship is valid (and it is not), by its own terms, it is limited exclusively to a motion picture derived from the Work.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

719191.1

The Certificate of Authorship provides as follows:

> For good and valuable consideration, receipt of which is hereby acknowledged, I acknowledge that all such services and the results and proceeds thereof, including, without limitation, all material of whatsoever kind or nature (all such material, services and the results and proceeds thereof (collectively, "Material"), rendered by me in connection with the Work were and/or will be solely created by me as a work specially ordered or commissioned by Owner ***for use as part of a motion picture***.  (Emphasis added.)

Kirkman testified that he did not know why the Certificate of Authorship limited its terms to a motion picture and did not know whether the intent of the document was to limit its terms to motion pictures.  (Kirkman DT 47:15-48:6.)  Under the express plain meaning of the terms of the Certificate of Authorship, it is limited exclusively to and only applies to the Work to the extent it is developed into a ***motion picture***. There has been no motion picture of *Invincible*, and thus, the Certificate of Authorship is not applicable to *Invincible* or any of its current derivative works.

### D.    <u>Kirkman's Affirmative Defenses</u>

1.    Failure to State a Claim

2.    Lack of Ownership

3.    Not Co-Authors

4.    Statute of Limitations

5.    Laches

6.    Estoppel

7.    Waiver

8.    Unclean Hands

9.    Justification

10.    Consent

11.    Failure to Mitigate

12.    Punitive Damages Unconstitutional

13.    Performance



EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW
719191.1

**PLAINTIFF WILLIAM CRABTREE'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

14.     Plaintiff's Breach

15.     Lack of Reliance


**E.      Elements of Kirkman's Affirmative Defenses**

1.      Failure to State a Claim

To support this defense Defendants must demonstrate that plaintiff has not made a claim with sufficient factual matter that, accepted as true, is "plausible on its face." *Iqball v. Ashcroft*, 566 u.s. 662, 678 (2009).

2.      Lack of Ownership

This affirmative defense is no longer at issue by virtue of the Court's Order Granting in part Motion for Summary Judgment.

3.      Not Co-Authors

This affirmative defense is no longer at issue by virtue of the Court's Order Granting in part Motion for Summary Judgment.

4.      Statute of Limitations

To establish this affirmative defense, Defendants must establish that, as to each claimed breach of oral contract and instance of money had and received, plaintiff's claim accrued before January 9, 2020.  Cal. Code Civ. Proc. § 339.  With respect to the declaratory relief cause of action, Defendants must establish that the claim accrued before January 9, 2018.  Cal. Code Civ. Proc. § 337, 343.  However, there are numerous issues pertaining to the accrual date of the claim that serve to toll the statute of limitations.  Specifically, under the "delayed discovery" doctrine, if the plaintiff proves that he did not discover and did not know of facts that would have caused a reasonable person to suspect, that he had suffered harm that was caused by the defendant's conduct, the claim does not accrue until the discovery.  CACI 455, Statute of Limitations – Delayed Discovery.  Additionally, a defendant may be estopped from asserting a statute of limitations defense if the defendant did or said something that caused the plaintiff to delay filing the lawsuit.  CACI 456,

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW

719191.1

Defendant Estopped from Asserting Statute of Limitations.

     5.   <u>Laches</u>

    "Laches is an equitable defense that prevents a plaintiff, who 'with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights.'" *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950-951 (2001) (quoting *S. Pac. Co. v. Bogert*, 250 U.S. 483, 500 (1919)). "To demonstrate laches, the 'defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself.'" *Danjaq*, *supra*, 263 F.3d at 951 (quoting *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000)).

     6.   <u>Estoppel</u>

    The doctrine of equitable estoppel "is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment." *City of Goleta v. Super. Ct.*, 40 Cal. 4th 270, 279 (2006). The elements of equitable estoppel are: "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." *People v. Castillo*, 49 Cal. 4th 145, 155 n. 10 (2010).

     7.   <u>Waiver</u>

    Waiver is "the intentional or voluntary relinquishment of a known right." *In re GVF Cannery, Inc.*, 202 B.R. 140, 144 (1996) (citing *Kay v. Kay*, 188 Cal. App 2d 214, 218 (1961)). "To constitute a waiver it is essential that there be an existing right, benefit, or advantage, a knowledge, actual or constructive, of its existence, and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that it has been relinquished." *Kay*, *supra*, 188 Cal. App. 2d at 218 (citing 51 Cal. Jur.2d Waiver

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

719191.1

Sec. 3).  "Waiver always rests upon intent.  Waiver is the intentional relinquishment of a known right after knowledge of the facts.  It implies the intentional forbearance to enforce a right."  *Wienke v. Smith*, 179 Cal. 220, 226 (1918).

8.    Unclean Hands

This affirmative defense has been abandoned.

9.    Justification

This affirmative defense has been abandoned.

10.  Consent

This affirmative defense has been abandoned.

11.  Failure to Mitigate

This affirmative defense has been abandoned.

12.  Punitive Damages Unconstitutional

This affirmative defense is no longer at issue by virtue of the Court's Order Granting in part Motion for Summary Judgment.

13.  Performance

This affirmative defense has been abandoned.

14.  Plaintiff's Breach

This affirmative defense has been abandoned.

15.  Lack of Reliance

This affirmative defense is no longer at issue by virtue of the Court's Order Granting in part Motion for Summary Judgment.

**F.    Key Evidence in Opposition to Each Affirmative Defense**

With respect to Kirkman's primary affirmative defenses of statute of limitations, laches, estoppel and waiver, Kirkman cannot establish the elements of these affirmative defenses.  Initially, with respect to the statute of limitations and laches defenses, Crabtree's claims accrued within the limitations period as a result of the delayed discovery doctrine and Kirkman is otherwise estopped from asserting these defenses.  As discussed in Section I.C., above, Kirkman did not provide any

719191.1

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

accounting or any other financial reporting to Crabtree to alert him to monies generated from the sales of *Invincible*.  As the Court has now established as fact, Crabtree relied on Kirkman for information pertaining to sales and financial information regarding *Invincible*.  Crabtree discovered facts leading him to suspect that he may be owed money from Kirkman when he saw news reports regarding the new *Invincible* series on Amazon Prime in August 2020.  Crabtree's breach of oral agreement claim accrued, at the earliest, in August 2020 when he learned of these facts.  In the fall of 2021, Kirkman's representatives, likely recognizing that the Certificate of Authorship was defective and otherwise limited only to a motion picture, rather than a television series, contacted Crabtree and attempted to get him to execute a modified version of the original Certificate of Authorship, which Crabtree rejected.  This lawsuit followed and was filed on January 9, 2022, which is well within the two-year breach of oral contract limitations period.  It was not until receipt of discovery in this very litigation that Crabtree learned that Kirkman had failed to pay Crabtree hundreds of thousands of dollars that were rightfully owed under the parties' Agreement.  Kirkman withheld this information from Crabtree, which caused Crabtree to delay filing his lawsuit.  Accordingly, under the delayed discovery rule, Crabtree's cause of action did not accrue until, at the earliest, August 2020, and his suit was filed within the limitations period.  Further, due to Kirkman's failure to disclose information to Crabtree regarding the revenues generated from Invincible, Kirkman is estopped from asserting a statute of limitations, laches or waiver defense.

As to the remainder of Kirkman's asserted affirmative defenses, based on the facts set forth in Section I.C, above, Kirkman cannot establish the elements of these affirmative defenses.

### G.   <u>Anticipated Evidentiary Issues</u>

The parties have each filed Motions in Limine detailing the anticipated evidentiary issues.  These motions are set for hearing on January 31, 2024.

**PLAINTIFF WILLIAM CRABTREE'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

719191.1

### H.    Issues of Law Germane to the Case

The discussion above captures the legal issues germane to this case.

## II.    BIFURCATION OF ISSUES

Neither party has requested bifurcation of any issues in this case.

## III.    JURY TRIAL

A timely jury trial demand has been made in plaintiff's complaint.

## IV.    ATTORNEYS' FEES

Neither party is entitled to recover his or its attorneys' fees either by operation of law or contract.

## V.    ABANDONED CLAIMS OR ISSUES

Plaintiff has not abandoned any claims.  Kirkman has abandoned the affirmative defenses of unclean hands, justification, consent, failure to mitigate, performance and plaintiff's breach.  Additionally, certain of Plaintiff's claims have already been adjudicated by the Court in connection with its Order Granting In Party Motion for Summary Judgment (ECF #36), which has also obviated numerous of Kirkman's affirmative defenses.

Dated:  January 3, 2024

EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP

By: */s/ Devin A. McRae*
Devin A. McRae
Peter D. Scott
Attorneys for Plaintiff
WILLIAM CRABTREE

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW

719191.1